# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| **T.T. and N.T.** | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ] |
| | ] |
| **Williamson County Board of Education** | ] |
| **Defendant.** | ] |

## COMPLAINT

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. T.T. is a natural person residing in the Middle District of Tennessee.

2. Williamson County Board of Education is empowered by the State of Tennessee to serve as the local education agency for Williamson County, Tennessee.

3. Because this is an action for damages, and declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12181, et seq. ("ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

4. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this Court, the United States District Court for the Middle District of Tennessee, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Middle District of Tennessee.

6. Plaintiff, T. T. has autism. The events described herein occurred while T.T. was a student in the Defendant's school system. T.T. is non-verbal. .

7. All events giving rise to this lawsuit occurred in the Middle District of Tennessee and the Defendant is a citizen thereof.

8. Accordingly, Plaintiffs, N.T. and T.T., have Article III standing to pursue this case because (1) T.T. is disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's school district is covered by the ADA, Title II, and Section 504 the Rehabilitation Act ("§504"), pursuant to the statutory and regulatory definitions; (3) TT. has suffered concrete and particularized injuries by being denied access to a free and full appropriate public education; (4) T.T. and N.T. have suffered concrete and particularized injuries because the Defendant either failed to create or failed to enforce appropriate policies, practices, and procedures for safe transportation of non-verbal autistic children like him; (4) because of these injuries there exists a genuine threat of imminent future injury, as described more particularly throughout.

9. T.T. is a hero. Despite the incredible challenges his autism presents, T.T. graduated with honors in Spring 2024 from the Defendant's school system. He was the only student in Centennial High School's 2024 senior class that achieved the designation of National Merit Finalist.

10. T.T.'s success also bore recognition from two engineering universities: Tennessee Tech University and the University of Alabama at Huntsville ("UAH"). Each offered T.T. a full residential scholarship in their engineering programs to study mechanical engineering.

11. T.T. will not attend either school as a direct result of the Defendant's conduct. It has harmed him immeasurably.

12. By comparison, immediately preceding the offensive conduct, T.T. made his third visit to UAH. It was a special event for admitted students.

13. T.T. and N.T. had discussed accommodations Tyler might need in college. They developed a list of accommodations he needed to be successful.

14. He brought with him a note from his doctor to assist in gaining disability accommodations for scholarship and housing.

15. Very shortly after his return, on April 11, 2024, T.T. boarded his special education bus to return home from school. This bus was provided to T.T. and other disabled students because they need it and it is required by their IEPs sometimes, the ADA and §504.

16. This day the bus had a recently new passenger- S.K. S.K. has a history of violent conduct and has caused injury to multiple students in the Defendant's school system. The school resource officer(s) knew of S.K.'s behavioral challenges; the administration at Williamson County Schools knew as well; as did the employees who operated the Defendant's buses. Prior to the harm to T.T. described herein, S.K. has been removed from several other busses because of his behavior.

17. S.K.'s rights under §504, the ADA and the IDEA, as well as all of the science of behavior and best practices demonstrate that the Defendant should provide a behavior plan for S.K. to be used on buses. This protects S.K. and other students. S.K.'s plan should have been reviewed routinely and adjusted accordingly. That plan should have had several interventions to prevent the injuries T.T. and others sustained.

18. Likewise, the existence of the plan behavior plan for S.K. requires the Defendant's staff be informed of it and trained on it. In the absence of actually implementing the

plan it is useless.

19. Ultimately S.K. boarded T.T.'s bus and assaulted T.T and threatened him with more, taunting him with death. He also assaulted at least one other student is also non-verbal and had significant special needs. In addition to lack of preparation for dealing with S.K.'s challenge, the Defendant did not have a bus aide nearby. This was preventable by the Defendant.

20. Because of his disability T.T. could not cry out for help or be heard.

21. After learning of the assault, N.T. inquired and was shown video of it. Among other things the video shows S.K. taking pleasure and enjoyment in the episode.

22. Despite their students being assaulted and threatened, N.T. was not made aware of any additional protection for T.T., the other victim or the safety of any other students.

23. In the fall of 2024 classes at UAH and Tennessee Tech started without the Plaintiff.

24. In the aftermath of the assault T.T. shut down. He lost interest in school at Centennial, as well as lost interest in going to college. He was physically and mentally traumatized from the events of that day. For several days after the assault T.T. would not touch his head. He began sleeping after school and showed little interest in school  It was difficult for N.T. to get him to school at all.

25. The Defendant was well aware of the damage they had caused. They were adjusting the grades of their only National Merit Finalist so that he could graduate.

26. T.T. was signed up for orientation to begin college but would not go.

27. Fall of 2024 brought more invitations to preview days at colleges. T.T. is not interested.

28. T.T. has spent an inordinate amount of time sleeping since the assault, seldom venturing out. He eats little and is depressed. His anxiety is elevated.

29. N.T. still suffers from anxiety, panic attacks and PTSD related to the assault. Her caregiver demands have markedly increased.

## COUNT I
## (NEGLIGENCE)

30. TT realleges the prior paragraphs of the Complaint.

31. The Defendant had a duty to protect T.T. and the other assaulted children from S.K.

32. The Defendant knew at all times the risk S.K. presented to other bus riders.

33. The Defendant had within its responsibility to protect T.T.

34. The Defendant breached the standard of care owed to T.T. and the other school bus riders.

35. As a proximate result of the Defendant's negligence T.T. was harmed and continues to suffer harm.

## COUNT II
## (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

36. The Defendant owed the aforesaid duty to T.T. and breached it. As a result Plaintiff N.T. was compelled to investigate and shown video of her son being assaulted.

37. N.T. has suffered damages thereby.

38. N.T. sought treatment for the emotional distress caused by the Defendant with licensed professional who will testify the emotional distress was caused by defendants conduct.

# COUNT III
## (ADA- FAILURE TO PROVIDE FULL AND EQUAL EDUCATIONAL BENEFITS)

39. TT realleges the prior paragraphs of the Complaint.

40. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. In other words, the disabled must receive equal benefits as the nondisabled. Further, The ADA requires that TT be provided a full and equal education in "the most integrated setting appropriate." The Preamble in addition recognizes that the disabled historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating disabled persons "to the status of second-class citizens."

41. TTs assailant has a developed history of violence and attacking and accomplished beat-downs on other buses. The assailant had attacked other children on the bus during the time he attacked TT, and the Defendant forced the assailant from other buses because of his campaign of violence against students.

42. The defendant knew of the assailant's prior attacks both because it had taken limited action on them and because the attacks were ongoing at the time of the last, prolonged and violent beatdown.

43. Because of the "equivalency" principle of title II, ADA the bus itself was perhaps an acceptable vehicle. Yet the district does not permit such violence, and a campaign of it to be sure, on its non-disabled, non-special ed transportation. Accordingly, the district's failure to provide safe transportation to Tyler on its allegedly equivalent

transportation, is a failure to provide full and equal transportation to TT. Transportation is a required educational mandate for the district, such that the district has failed to provide a full and equal education to TT.

## COUNT IV
### (ADA-FAILURE TO EITHER CREATE OR IMPLEMENT POLICIES, PRACTICES AND PROCEDURES)

**44.** Plaintiffs reallege prior paragraphs of the Complaint.

**45.** TT was brutally and repeatedly beaten and threatened and made to fear for his life on the school operated, supervised and controlled transportation.

**46.** It may not be the official practice, policy, or procedure of the defendant to permit students to attack and beat each other.

**47.** The district is responsible under the ADA to create and implement the practices, policies, and procedures necessary to prevent students from beating disabled students even on one occasion, much less as an ongoing concern.

**48.** Although it may not be the defendant's official practice, policy, or procedure to permit the beatings TT and his fellow students endured, the beatings occurred nevertheless. Accordingly, defendant either failed to create the proper policies, practices, and procedures to prevent the assailant from his attacks on TT, or else, if such policies, practices, or procedures existed, they were not implemented.

**49.** By this Complaint as well as prior communications, Plaintiffs provide sufficient notice of their demand for an alteration in Defendant's policies, practices, and procedures.

**50.** Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their reasonable attorney's fees,

costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

51. Pursuant to the ADA, this Court is authorized to enjoin these illegal policies, practices, and procedures, as well as to order defendants to promulgate legal policies, practices, and procedures.

## COUNT V
## (SECTION 504 OF THE 1973 REHABILITATION ACT)

52. Plaintiff realleges prior paragraphs of the Complaint.

53. The Rehabilitation Act of 1973, Section 504 requires that the school district provide all students free appropriate public education ("FAPE").

54. The district is a public education provider covered by the Rehabilitation Act of 1973, Section 504.

55. Because of the "equivalency" principle, the bus itself was perhaps an acceptable vehicle. Yet the district does not permit such violence anywhere in its operation by students against students. Instead the district makes some effort to provide safe transportation, as required. Accordingly, the district's failure to provide safe transportation to Tyler on its allegedly equivalent transportation, is a failure to provide full and equal transportation to T.T. Transportation is a required educational mandate for the district, such that the district has failed to provide a full appropriate education to T.T.

## COUNT VI
## (TITLE II, ADA--DISABILITY BASED HARASSMENT AND DISCRIMINATION)

56. Plaintiffs reallege prior paragraphs of the Complaint.

57. T.T.'s assailant had a history of attacking and accomplished beat-downs on students, perhaps other autistic and special needs children on the bus, with a particularized focus on the non-verbal because they could not outcry. The assailant had attacked other children on the bus during the time he attacked T.T., and the assailant had been forced from other buses perhaps because of his campaign of violence against the autistic, special needs and the nonverbal.

58. The Defendant knew of the assailant's prior attacks both because it had taken limited action on them and because that the attacks were ongoing at the time of the last, most violent beatdown.

59. The district is a public entity within the meaning of title II of the ADA.

60. TT is an individual with a disability within the meaning of the ADA, as pled previously, and the district knew that, by virtue of information it obtained with its provisions of special ed services to TT.

61. TT was harassed and assaulted based on his disabilities by the assailant student. The district permitted this student assailant to injure TT and others who it knew were disabled students.

62. The harassment and assault were sufficiently severe or pervasive that it altered the condition of TT's education and created an abusive educational environment, which the District was on notice of. The district was deliberately indifferent to the ongoing abuse and thus created a situation that effectively denied the benefit of participating in the services, benefits, programs of education. For example, he was denied the benefit of a safe bus ride because he was afraid to ride the bus; he was denied his full academic

educational benefits because he could not focus on school due to the abuse and psychological harm, including PTSD.

63. These injuries support the award of the relief available under the statutes.

**WHEREFORE, PREMISES CONSIDERED, T.T. DEMAND AS FOLLOWS:**

a. For compensatory damages;

b. For a permanent injunction ordering the Defendant to implement policies and procedures whereby otherwise qualified persons are able to access the Defendant's transportation without the risks the Plaintiffs were forced to incur;

c. For such other relief as the Court deems appropriate.

**RESPECFULLY SUBMITTED,**
T.T. and N.T.
By their attorneys:

/s/ Michael F. Braun
_____
MICHAEL F. BRAUN BPR032669
5016 Centennial Blvd., Suite 200
Nashville, TN 37209
(615) 378-8942
mfb@braun-law.com

/s/ L. Landis Sexton
_____
L. LANDIS SEXTON *Pro Hac Vice* Pending
3116 Southview Avenue
Montgomery, AL 36106
(334) 303-9359
landis7777@gmail.com

**JURY DEMAND**

The Plaintiffs demand a trial by struck jury on all claims so triable.

s/ Michael F. Braun
_____